[Civil No. 3993. Filed November 28, 1938.]

[84 Pac. (2d) 575.]

HARRY W. HILL, Receiver of INTERMOUNTAIN BUILDING & LOAN ASSOCIATION, a Utah Corporation, Appellant, v. A. H. FAVOUR and A. G. BAKER, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Favour & Baker and Mr. A. M. Crawford, for Appellees.

ROSS, J.—On or about November 28, 1930, Thomas R. Short and Catharina Short, his wife, gave their promissory note for $5,163, secured by mortgage on real estate situate in Prescott, Yavapai county, Arizona, to the Intermountain Building & Loan Association, a Utah corporation, and hereafter referred to as the Association.

On June 2, 1936, the Shorts filed their complaint in interpleader in the superior court of said Yavapai county naming R. O. Barrett, A. H. Favour, A. G. Baker, and H. S. McCluskey, the Receiver of the Association, and the Association, as conflicting claimants of the note and mortgage and praying that they be compelled to interplead and litigate their several claims among themselves. In due course defendants Barrett, Favour and Baker filed an answer in said

cause, in which Favour and Baker claimed to be the owners of said note and mortgage through a purchase by Barrett at a judicial sale by the sheriff of said Yavapai county, made under and pursuant to an order and judgment of said court in the case of *Margaret Cobb* v. *Intermountain Building & Loan Association* foreclosing an attachment lien on

"all of the right, title, claim and interest of the within named defendant . . . Association . . . in, of and to that certain real estate mortgage made and executed by Thomas Short and Catharina Short . . . to . . . Association"

to pay an indebtedness of the Association to said Cobb. They alleged that a bill of sale of said mortgage was given to Barrett by the sheriff and that Barrett duly assigned the same to Favour and Baker. It is alleged that the attachment in the Cobb case was made on or about January 9, 1934, by serving a copy of the writ and levy upon the Shorts and by recording the levy in the county recorder's office; that the trial of the cause was had on April 4, 1934, and that judgment was given for $1,000 in favor of Cobb and the attachment foreclosed and the property sold as above stated.

The receiver of the Association filed an answer raising questions of law solely. He asserts in his answer that the Short note and mortgage were and are assets of the Association, because (1) the attachment did not purport to be levied upon the note but only upon the mortgage; (2) the attaching officer did not take possession of the note and mortgage, or either of them, at the time of the purported levy, or at all, such personal property being in the possession of the Association or its agents in Maricopa county; (3) debts evidenced in writing may not be reached by attachment process but must be reached by garnishment process, if at all. The receiver further asserts in his

answer that the assets of the Association, including the Short note and mortgage, at the time of the proceedings in the Cobb case were in the constructive possession of the United States District Court for Arizona by virtue of an action theretofore filed therein, in which process had been issued and served, the Association being during all such time insolvent.

It is further alleged in the answer of the receiver that the judge who tried the Cobb case was a visiting judge from Navajo county and that the judgment in the case was void and of no effect because the statutes as to the manner and times of entering judgments by an outside judge were not followed.

These were the issues made by the conflicting claimants. The interpleaders at the time of the filing of their complaint paid into the court $3,000, which, together with payments theretofore made, they estimated to be enough to satisfy the note, but stated that if the court found they owed any more they were ready, able and willing to meet it. They further alleged they had no interest in the matter other than to ascertain, as between the conflicting claimants, which was entitled to the proceeds of the note. It was stipulated by Favour and Baker that they would claim no interest from the time of the tender of the $3,000 into court.

The court found the note and mortgage belonged to Favour and Baker and entered decree accordingly. In other words, the court held that the attachment proceeding in the Cobb case, including the sale of the mortgage thereunder, was legal and passed title to Barrett at such sale, and that Favour and Baker, the assignees of Barrett, were the owners of the note and mortgage. The receiver of the Association, Harry W. Hill, who had been in the meantime substituted for McCluskey, prosecutes an appeal from the judgment.

The appellees make the point that Thomas R. Short and Catharina Short and R. O. Barrett should have been made parties to this appeal and that because the bond on appeal did not run to them the appeal should be dismissed. They accordingly make a motion to that effect.

From the statement of the case it is quite clear that Barrett disposed of all interest he may have acquired in the note and mortgage to the appellees and that he can have no further interest in the action. The only reason suggested why the Shorts should be made parties is that their tender into court was less than claimed by both sets of defendants.

This action was begun under section 4327 of Revised Code of 1928. It cannot be maintained if the interpleader asserts any right or interest whatever against the conflicting claimants. *Kenney* v. *Bank of Miami,* 19 Ariz. 338, 170 Pac. 866; 15 R. C. L. 229, sec. 12. He is a stakeholder for the other parties, ready and willing to abide by any decision of the court as to how he shall perform his obligation or any portion thereof. In the complaint apparently it was not convenient for the interpleaders to ascertain the exact amount owing on the note and mortgage and for that reason they could not tender the exact amount. They accordingly offered to perform the contract as the court might direct, which seemed to be satisfactory to the conflicting claimants.

The motion to dismiss is denied.

The appellees invoke the rule of this court that in the absence of all the evidence we will presume that it was sufficient to support the judgment of the trial court. They assert that all the evidence taken at the trial is not before us. The case comes here on a bill of exceptions. It is said by counsel for the receiver that the evidence was stenographically reported

but that they were unable to get the court reporter to transcribe it because the reporter stated he could not find his notes. This is not disputed. However, the statute (sec. 3870, Id.) provides that "in lieu of the statement of facts or transcript of the reporter's notes" a party may "file a bill of exceptions." It is provided that no particular form of words shall be required and that only so much of the evidence as may be necessary to explain the exceptions will be sufficient. Other provisions of the statute are, that a bill of exceptions shall be served upon the adverse party, which it appears was done in this case, and that such party may suggest any amendments that he deems necessary, in which case the court settles the bill of exceptions allowing or rejecting objections. Sections 3865, 3866, Id. In this case appellees did file objections and such objections were in part incorporated in the bill of exceptions and approved by the court. It appears that the statutes were followed and that the appellees had an opportunty to cause any evidence omitted to be inserted in the bill of exceptions had they thought it necessary. There is in the trial of every case a great deal of matter introduced in evidence that becomes immaterial in the hearing before the Supreme Court on appeal, and the elimination from the bill of exceptions of such useless matter is very desirable. The rule seems to be not to include unnecessary evidence in bills of exceptions. 4 C. J. S., Appeal and Error, 1306, § 819; Bancroft's Practice, vol. 8, p. 8948, sec. 6573.

We shall now consider the respective claims of the parties.

■ The Short note originally belonged to the Association. It paid the consideration for it and was named the payee. The mortgage was an incident to the note and inseparable therefrom. If the Associa-

tion has lost its title to the note and mortgage, or the debt they represent, it was through the proceedings had in the case of *Margaret Cobb* v. *Intermountain Building & Loan Association,* which was an action for debt. The plaintiff in that action not only asked judgment for the debt owing her but, to aid her in collecting any judgment obtained, sued out a writ of attachment and caused the same to be levied on the Short "real estate mortgage." The lien, if any, created by such levy was subsequently foreclosed and under a special execution or order of sale the property was sold to appellees' assignor Barrett. It will be observed that the note was not levied upon. The levy was limited to the mortgage as were also the foreclosure and the sale. If appellee bought anything, it was the mortgage. Does such a purchase cover the debt secured by the mortgage or the note—the evidence of the debt? The law seems to be well settled that the mortgage is a mere incident to the debt and that its transfer or assignment does not transfer or assign the debt or the note. The mortgage goes with the note. If the latter is transferred or assigned, the mortgage automatically goes along with the assignment or transfer. The rule is very well stated in *First Nat. Bank of Saco* v. *Vagg,* 65 Mont. 34, 212 Pac. 509, 510, as follows:

"A mortgage is a conveyance within the meaning of the record laws of this state, though it is a conveyance of a chattel interest only. Title to it passes to an assignee by assignment of the debt or obligation secured by it; for the mortgage is but an incident—a security—and, independent of the debt, has no assignable quality. Such assignment is a mere nullity. Where there is no written evidence of the debt or obligation, the mortgage is evidence both of the debt and security for its payment. Nevertheless the debt is the principal thing, and the title to the mortgage must follow an assignment of it. *Cornish* v. *Wool-*

*verton et al.,* 32 Mont. 456, 81 Pac. 4, 108 Am. St. Rep. 598. The mortgage, being a mere incident of the debt, cannot be assigned separately from it, so as to give any beneficial interest. The incident may pass by a grant of the principal, but not the principal by a grant of the incident. Jones on Mortgages (7th Ed.) § 805, p. 274. A mortgage, as distinct from the debt it secures, is not a thing of value nor a fit subject of transfer; hence an assignment of the mortgage alone, without the debt, is nugatory, and confers no rights whatever upon the assignee. 27 Cyc. 1286; *Nagle* v. *Macy,* 9 Cal. 426. The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while the assignment of the latter alone is a nullity. *Jackson* v. *Blodget,* 5 Cow. (N. Y.) [202], 205; *Jackson* v. *Willard,* 4 Johns. (N. Y.) [41] 43. . . . ''

In *Schleef* v. *Purdy,* 107 Or. 71, 214 Pac. 137, 140, it is said:

''Until foreclosure and sale the mortgage is a mere chose in action secured by a lien upon the land, which gives to the mortgagor [mortgagee] no title or estate whatever to the mortgaged premises. The mortgagor [mortgagee] has no interest in the mortgaged premises which he can sell or which can be sold separately from the debt itself, and the transfer of the mortgage, without a transfer of the debt intended to be secured thereby, is a mere nullity. . . . ''

See, also, *Carpenter* v. *Longan,* 16 Wall. 271, 21 L. Ed. 313; *Missouri Real Estate & Loan Co.* v. *Gibson,* 282 Mo. 75, 220 S. W. 675; *Webb* v. *Hoselton,* 4 Neb. 308, 19 Am. Rep. 638; *Miller* v. *Berry,* 19 S. D. 625, 104 N. W. 311.

 We conclude that neither the debt nor the note, the evidence of the debt owed by the Shorts to the Association, was attached, foreclosed or sold to appellees' assignor.

■ But there is another reason urged by appellant why the attachment features of the Cobb case fall short of divesting the Association of its title to the Short note and mortgage. It is asserted that choses in action, such as notes, mortgages and debts in general, are not subject to seizure and sale under execution in the absence of express statutory authority. This is the rule recently announced by this court in *Maricopa County* v. *Trustees of Arizona Lodge, etc., ante,* p. 329, 80 Pac. (2d) 955.

■ When the statutes provide how property may be attached as security to pay any judgment obtained, that method must be substantially followed. In the Cobb case the levy of the attachment was made, according to the sheriff's return,

"by serving a copy of said Writ of Attachment upon Thomas Short and Catharina Short, his wife, mortgagors; and that I caused a copy of said Writ of Attachment to be served upon the Intermountain Building and Loan Association, a corporation, defendant, mortgagee, and by causing a copy of this return to be recorded in the office of the Recorder of Yavapai County, Arizona."

There is no statute authorizing a levy on personal property to be made in the manner stated. Under section 4249, Id. (Attachment and Garnishment), the writ of attachment is required to be levied in the same manner as a writ of execution. Turning to the provisions of the statute concerning the manner of levying an execution, we find that the levy on real estate is made by indorsing such levy on the writ and filing a copy of such writ, with the indorsement of levy thereon, with the county recorder of the county in which such property is situated. And "to levy on personal property he [the officer] shall take possession thereof, when the defendant in execution is entitled to the possession." Sec. 4218, Id. The note and the

debt evidenced thereby are personal property and the lien of the mortgage is a chattel interest only. The situs of this personal property was that of the residence of the owner. These instruments were at all times in the actual, as well as the constructive, possession of the Association. The officer who made the attachment levy never had the possession of such personal property—a *sine qua non* to a valid attachment of personal property, with some exceptions enumerated in section 4218, *supra*. The statutes provide that if a plaintiff sues for a debt, and the debtor has not within the plaintiff's knowledge property in his possession and within the state subject to execution sufficient to satisfy such debt, but does have credits or property in the possession of a third person, he may obtain from the court a writ of garnishment and have it served upon such third person and thereby sequester such assets of the debtor for the payment of plaintiff's demand. Sec. 4258 et seq. We think the method prescribed by the law should be pursued when a party seeks by attachment or garnishment process to subject his debtor's property to the satisfaction of his debts. In this case there was a complete departure from the requirements of the statutes.

Because the officer never had possession of the note and mortgage, he could not comply with the provisions of section 4222, Id., requiring personal property, capable of immediate delivery to the purchaser, to "be within view" at the sale.

Had the process of garnishment been invoked as the statutes require, the creditor might have obtained his debt without sacrificing the whole debt garnished. Here, if garnishment had been followed, the answer of the garnishees (the Shorts) to the writ would necessarily have been that they were indebted to the Association the unpaid portion of the note and, unless

the Association had presented a sufficient legal reason why judgment should not be entered against the garnishees, the plaintiff Cobb would have been given judgment for the amount of her claim of $1,000 and the balance of the note would have been left as an asset of the Association and for distribution among its general creditors.

In *Haigler* v. *Burson,* 38 Ariz. 192, 298 Pac. 404, the levy of a special execution on a judgment and on 350,000 shares of stock of a corporation without taking the stock into possession was held to be "no levy and, failing that, the sale was void and conveyed nothing." (Page 195.) Of section 4218, *supra,* we said:

" . . . The section is lengthy, and we need not quote it, but it will be seen upon careful examination thereof that while shares of stock in a corporation are levied on by leaving notice thereof with the secretary of the corporation, or some other officer upon whom service of process may be made, no method whatever is provided, whereby a levy may be made upon a debt, credit, or chose in action. At common law, judgments, like other choses in action, were not subject to levy and sale under execution. *McBride* v. *Fallon,* 65 Cal. 301, 4 Pac. 17; *Acme Harvesting Machine Co.* v. *Hinkley,* 23 S. D. 509, 122 N. W. 482, 21 Ann. Cas. 743. . . .

"In Arizona the only method provided whereby a debt owing from a third party to a judgment debtor can be reached is through our garnishment statutes. This is the method always used, so far as we are aware, and it gives a full and adequate method of reaching the debt. . . .

"We are of the opinion, therefore, that although section 4217, Revised Code of 1928, *supra,* makes debts (and therefore judgments) subject to execution, the only way the statute has provided for reaching them is found in the sections covering garnishment. Since these statutes were not followed so far as the attempted levy on the judgment itself is concerned, and section 4218 was not followed so far as the attempted levy on the corporate stock mentioned in the judg-

ment is concerned, there was no levy and, failing that, the sale was void and conveyed nothing. . . . ''

The sum and substance of the decision in the Haigler case is that a chose in action, such as a judgment, may not be seized and sold under execution but must be reached by a writ of garnishment served upon the judgment debtor, and that shares of stock in a corporation cannot be seized and sold under an execution but must be reached as provided in section 4218, *supra*, that is ''by leaving notice thereof with the secretary or other officer of the corporation upon whom service of process is authorized.'' If this case is ruled by the Haigler case, and we think it is, there was no legal levy or sale of the Short note or mortgage in the Cobb case, and appellees obtained no title or interest in such note or mortgage.

Appellees contend that to hold thus would be a collateral attack on the judgment in the Cobb case. They insist in this case the court had jurisdiction of the parties and the subject matter, and the only way the judgment, if erroneous, could be corrected was on direct appeal. There is no question but that the judgment for debt in the Cobb case is unimpeachable by collateral attack. It is the feature of the judgment in that case that undertook to declare and adjudge an attachment lien on the mortgage interest of the Association in the real property covered by the mortgage that is questioned. It is settled by the decisions of this court and others that jurisdiction of the parties and the subject matter is not only essential to a valid judgment but that the court have jurisdiction to enter the particular judgment it did enter. *Brecht* v. *Hammons*, 35 Ariz. 383, 278 Pac. 381; *Latham* v. *McClenny*, 36 Ariz. 337, 285 Pac. 684; *Sawyer* v. *Ellis*, 37 Ariz. 443, 295 Pac. 322. As we have seen, under the statute the levy, the order foreclosing the

lien and the sale were null and void and of no effect. In other words, the court exceeded its power in declaring that the attachment levy on the mortgage gave the plaintiff a lien on it or on the realty covered by it, because the procedure pursued to secure lien is sanctioned neither by the common law nor by statute. The appellees cite and rely upon *Tube City Min. & Mill. Co.* v. *Otterson*, 16 Ariz. 305, 146 Pac. 203, L. R. A. 1916E 303, as authority for their claim that the contentions of appellant are a collateral attack upon the judgment in the Cobb case. That case involved the validity of a lien claim for services in hauling fuel oil from a railroad station to a mining claim, and also other items that were clearly lienable under the law. There was serious contention that the claim for services in hauling the fuel oil was not lienable. The trial court held that all the items of the lien claim were lienable. This judgment became final and thereafter the property was sold by the sheriff and a certificate of sale delivered to the plaintiff as the purchaser. Thereafter the defendant mining company brought an action to have the judgment foreclosing the lien vacated and the sheriff enjoined from delivering a deed to the purchaser of the property. It was held that this could not be done; that the judgment as to the validity of the lien and the different items therein was final and conclusive; that although some of the items might not have been lienable, the court had a right to pass upon that question and that, although it might have been error to include the claim for services in hauling fuel oil, the court had jurisdiction to decide wrong as well as to decide right, and that the only remedy to correct the error was by appeal. The opinion in the case was written by Chief Justice FRANKLIN and is a very thorough exposition of the law on collateral attack. We do not think, however, that it

covers the facts in this case. In the Tube City case the manner of securing the lien and foreclosing it was in accordance with the statutes. Here the statutory manner and method of securing the lien on the property of the debtor was not followed but was ignored. The method to confer jurisdiction on the court to fix and declare a lien on the Short note was not pursued as in the Tube City case.

The other questions raised by the appellant we do not discuss for however they might be decided the result would be the same.

The judgment of the lower court is reversed and the cause remanded with directions that judgment be entered for the appellant.

McALISTER, C. J., and LOCKWOOD, J., concur.