826 P.2d 340

**UNITED STATES of America,
Intervenor/Appellant,**

v.

**Joseph John HOFFMAN; Barbara Ellen Kingsolver; Gayla B. Burns, an unmarried woman; Joyce M. Lewis, a single woman; Pacific Coast Investment Company Profit Sharing and Pension Trust for the individual accounts of Robert B. Chesterfield, Sr. and Robert W. Hoss, each as to an undivided fifty percent interest; Fairlane Mortgage and Realty Corp., a Michigan corporation; Andrew J. Ferencak, a married man in his sole and separate right; Cynthia Ann Poedel; State Drywall, Inc., an Arizona corporation; Flora F. Thorman; Richard H. Davis Intervivos Trust, William H. Davis, Trustee; Sidney Brown Allan and Martha A. Allan, husband and wife; Mike T. Arroyo and Carmen V. Arroyo, husband and wife; Automotive Protection Corporation, an Arizona corporation; Rita A. Kutzmer, a married woman in her sole and separate right, Defendants/Appellees,**

**Keith A. Baquet, as personal representative under the will of Calvin D. Baquet; Real Estate Commissioner Joe Sotelo, Intervenor Defendants/Appellees.**

No. 2 CA–CV 91–0081.

Court of Appeals of Arizona,
Division 2, Department B.

Jan. 23, 1992.

Supplemental Opinion on Motion
for Reconsideration Feb. 20, 1992.

Linda A. Akers, U.S. Atty., D. Ariz. by Shirley D. Peterson, Gary R. Allen, William S. Estabrook and Elizabeth K. Wickstrom, Washington, D.C., for intervenor/appellant.

William E. Druke and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Stephen E. Renneckar, Tucson, for defendants/appellees and intervenor defendants/appellees.

## CORRECTED OPINION

HOWARD, Judge.

The United States of America appeals from the dismissal of its claim to $63,500, which sum was interpled by Title Security Agency of Arizona (Title Security). The United States claims this sum based upon tax liens against Gerald E. Kaphing. Appellees as allegedly secured creditors also claim an interest in this sum.

## FACTS

In May 1976, Kaphing sold certain real property to Western Palms Associates (Western Palms), Classic Development Corporation (Classic), and others. As part of the transaction, Kaphing received a promissory note executed by Western Palms, secured by the Classic deed of trust. Kaphing retained Title Security as collection escrow agent for sums owed on the note. The deed of trust was recorded.

Between May 6, 1976, and November 5, 1986, Kaphing gave each of the creditors presently before us a personal promissory note secured by a collateral assignment of his beneficial interest in the Classic deed of trust.[1]

All but two of the collateral assignments not only assigned an interest in the Classic deed of trust, but also assigned an interest in the Western Palms note or any proceeds due or to be due from said note. The assignments to the Allans and Burns only assigned an interest in the Classic deed of trust. All of these assignments were recorded in the office of the Pima County Recorder prior to November 16, 1986.

On May 11, 1987, Kaphing was assessed for unpaid 1981 income taxes and on August 3, 1987, for unpaid employment taxes. The government recorded the lien on December 15, 1987. Taxes, interest and penalties totaled $62,204.64 as of November 2, 1990.

After Title Security received conflicting instructions regarding disbursement of the escrow account, it filed an interpleader complaint. Thereafter, the promissory note was paid off in full with $1,060,379.42. A bank holding the first deed of trust was paid $619,027.53. The remainder was paid into Kaphing's escrow collection account.

Ultimately, a hearing was held regarding the priority of the creditors. A stipulation was entered between consenting parties, whereby each stipulating creditor received a pro rata percentage of interpled funds, except that $92,000 was withheld from distribution pending resolution of the claims of three non-stipulating creditors, for the United States' claim for $63,500.

The trial court granted summary judgment against the United States and the other two non-stipulating creditors, and dismissed the claims of the United States.[2]

Appellant contends that the only way appellees can have a superior right to the proceeds of the Western Palms note is by virtue of a prior security interest in the note. It argues that the recording of the collateral assignments of the Classic deed of trust did not give appellees any secured interest in the Western Palms note and that in the absence of the assignment and recording of the Western Palms note, compliance with Article Nine of our Uniform Commercial Code, A.R.S. § 47–9101 et seq., prior to the filing of the tax lien, was necessary in order for appellees to have had such security interest.

Appellees contend that Article Nine does not apply to real estate transactions and that their recording of the collateral assignments gave them an interest in the note. They also contend that if the Uniform Commercial Code does apply, they had a security interest by virtue of A.R.S. § 47–9305.

## I.

Where a federal tax lien is asserted, state law determines the nature and extent of a taxpayer's interest in the property. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). The relative priority of the lien of the United States for unpaid taxes, however, is always a matter of federal law. *United States v. Pioneer American Insurance Company,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). The rights of private creditors with respect to

---

1. These creditors are appellees Hoffman, Kingsolver, Allan, Arroyo, Ferencak, State Drywall, Davis and Burns.

2. In doing so, the trial court found that because there was no showing that Kaphing was insolvent at the time of the assignments, the Internal Revenue Service's subsequent lien against this res was invalid. The government does not challenge this on appeal.

the federal tax lien are set forth in 26 U.S.C.A. §§ 6321–6326. Section 6323(a) provides that the federal tax lien is not valid against, inter alia, a holder of a security interest until notice thereof is properly filed. Section 6323(h)(1) defines "security interest" as "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." Under Section 6323(h)(1), such security interest exists, as a matter of federal law

> at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

## II.

■ What did appellees Allan and Burns receive as a result of Kaphing's assignment to them of his beneficial interest in the Classic trust but not the Western Palms note or its proceeds? They received the same interest which Kaphing had: a security interest in the property which was the subject of the deed of trust. While the deed of trust was given to secure the payment of the Western Palms note, the deed of trust neither by its terms nor by operation of law gave Kaphing a right to the proceeds of the note. His right to the proceeds of the note came from the note itself. The deed of trust executed in compliance with the Western Palms note was a mortgage under A.R.S. § 33–702. The law is clear in Arizona that while an assignment of the note carries the mortgage with it, the assignment of the mortgage alone does not give the assignee any interest in the note or its proceeds. *Hill v. Favour*, 52 Ariz. 561, 84 P.2d 575 (1938).

■ When the balance on the note was paid to Title Security, Kaphing's interest in the deed of trust was extinguished. Mortgages are given to secure the performance of an obligation and, under a lien theory, fall when the obligation ends. *Weather-*

*ford v. Adams*, 31 Ariz. 187, 251 P. 453 (1926). It is of no moment that when the tax lien was filed the satisfaction of the deed of trust had not been recorded and the trustee had not yet been instructed to deliver the documents to Kaphing. As far as Western Palms was concerned, it paid the balance due on the note and the debt was extinguished. Equity regards that done which ought to be done. *Heller v. Levine*, 7 Ariz.App. 231, 437 P.2d 983 (1968).

## III.

■ Those appellees to whom Kaphing assigned both an interest in the Classic deed of trust and the Western Palms note had, pursuant to A.R.S. §§ 33–411(A) and 33–706, a prior security interest by virtue of the recording of the collateral assignments.

## IV.

■ As for the Uniform Commercial Code, Article Nine does not apply to the creation or transfer of an interest in or lien on real estate, except for fixtures under A.R.S. § 47–9313. *Rucker v. State Exchange Bank*, 355 So.2d 171 (Fla.App.1978) (the assignment of a real estate mortgage securing a promissory note is not a secured transaction under Article Nine). What may be called "realty paper" is subject to Article Nine. White and Summers, *Uniform Commercial Code* § 22–7, 890–91 (2nd ed.) 1980. White and Summers give the following example of what is "realty paper." "B mortgages his real estate to L. L pledges B's note and the real estate mortgage to Bank as security for a loan. Article Nine does not apply to the transaction between B and L, but does apply to the transaction between L and Bank." *Id.* at 890. It is clear we are not dealing with "realty paper" here. The assignments of an interest in the Classic deed of trust were not subject to Article Nine of the Uniform Commercial Code.

## CONCLUSION

■ Those appellee creditors who received an interest in both the Classic trust

and the Western Palms note are entitled to priority over the United States tax lien. Those who did not are not entitled to priority.

Affirmed in part, reversed and remanded in part for further proceedings consistent with this opinion.

FERNANDEZ, P.J., and HATHAWAY, J., concur.

## SUPPLEMENTAL OPINION ON MOTION FOR RECONSIDERATION

HOWARD, Judge.

On motion for reconsideration appellees Allan have pointed out that the collateral assignment to the Allans did contain language which assigned the Western Palms note. We agree. The Allans are entitled to priority over the United States tax lien.

Our opinion stands as written in all other respects.

FERNANDEZ, P.J., and HATHAWAY, J., concur.